# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| MICROBAN PRODUCTS COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| PILOT, INC. | ) | |
| D/B/A PILOT AUTOMOTIVE LLC | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

## VERIFIED COMPLAINT

**COMES NOW** Plaintiff Microban Products Company ("Plaintiff" or "Microban"), by and through the undersigned counsel, and in support of this Complaint against Defendant Pilot, Inc. d/b/a Pilot Automotive LLC ("Defendant" or "Pilot"), does hereby allege and aver as follows:

## NATURE OF THE ACTION

1.      This is an action seeking permanent injunctive relief and damages for (1) breach of contract; (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (3) false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair and deceptive trade practices under the laws of the State of North Carolina pursuant to N.C. Gen. Stat. § 75-1.1, *et seq*.; and (5) North Carolina common law unfair competition, all arising from Defendant's failure to pay Microban fees owed under the parties' License and Supply Agreement, and the First Amendment thereto, and unlawful conduct in knowingly and intentionally continuing to use Microban's trademarks after termination of the license agreement. True and correct copies of the Agreement and Amendment are attached hereto as Exhibits 1 and 2, respectively.

1

## PARTIES

2.      Plaintiff Microban Products Company is a corporation duly organized and validly existing under the laws of the state of North Carolina with its principal place of business located at 11400 Vanstory Drive, Huntersville, North Carolina, 28078. Microban is a wholly-owned subsidiary of Microban International, Ltd. ("MBI"), a corporation duly organized and validly existing under the laws of the state of Delaware with its principal place of business located at 11400 Vanstory Drive, Huntersville, North Carolina, 28078.

3.      Upon information and belief, Defendant Pilot Inc. f/k/a Pilot Automotive Inc. d/b/a Pilot Automotive LLC ("Pilot") is a corporation duly organized and validly existing under the laws of the state of California with its principal place of business located at 4889 4th Street, 2nd Floor, Irwindale, California, 91706.

4.      Defendant Pilot entered into a License and Supply Agreement with MBI, which was duly assigned to Microban, in this State and District for the purchase of antimicrobial additives for use in the manufacture of Defendant's products and license to use Microban's trademarks in connection with the marketing and sale of Defendant's products made with Microban's antimicrobial additives.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) because it arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action concerns a dispute between citizens from different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    This Court has jurisdiction over Plaintiff's claims under the laws of the State of North Carolina based upon principles of supplemental jurisdiction and in accordance with 28 U.S.C. § 1367(a), in that the statutory and common law state claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.    This Court has *in personam* jurisdiction over Plaintiff Microban in that it is a corporation conducting business in this state and in this district and division.

8.    This Court has *in personam* jurisdiction over Defendant Pilot, as it is conducting business in this district and division, specifically it entered into the Supply and License Agreement with Microban in this district and division. The Supply and License Agreement contains a choice of law and venue provision that provides the Agreement shall be governed by the laws of the State of North Carolina and that all disputes arising under the Agreement shall be brought in the state and federal courts located in Mecklenburg County, North Carolina.  Pilot expressly submitted to the jurisdiction and venue of this Court and waived all objections thereto under the Agreement. Further, Defendant Pilot is engaged in trademark infringement and unfair competition directed at and causing injury to Plaintiff within this district and division. Upon information and belief, Defendant intentionally committed the acts complained of herein knowing that the harm would be suffered by Plaintiff in this district and division.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that Defendant is transacting business in this district, and because a substantial part of the events giving rise to Microban's claims occurred in this judicial district.

3

## STATEMENT OF FACTS

**A.      Microban's History and Trademark Rights in Antimicrobial**

10.     Since its founding in 1984, Microban has grown to become a leading global expert in the development, manufacture, and sale of proprietary antimicrobial and odor control technology and ingredients under the MICROBAN mark.

11.     Backed by scientific data, Microban technologies provide 24/7 built-in product protection against bacteria, mold and mildew.   Microban's extensive technology portfolio represents the world's biggest range of proprietary antimicrobial and odor control additives (the "Microban Compounds"). These Microban Compounds, when incorporated into polymeric, textile, or other materials, imbue those material with durable antimicrobial qualities. Microban also has a line of disinfection products sold at retail and in the healthcare space.

12.     Microban's primary business is to work with its brand partners, primarily manufacturers of consumer products, ("Brand Partners") to customize Microban Compounds into the Brand Partners' products in a manner that will not disrupt the manufacturing process or affect the final finish of the products. Microban has over 800 Brand Partners worldwide, treating products from home appliances, flooring, food storage containers, decorative coatings, automotive interiors, water tanks, apparel, medical supplies, and many more.

13.     As part of the agreement in working with Microban and using the Microban Compounds, Microban requires its Brand Partners to co-brand its products and prominently display its MICROBAN® trademarks on the products and in advertising to identify Microban as an ingredient brand in the products. As such, Microban grants a limited license to its Brand Partners to use its MICROBAN® trademarks under specific terms and conditions, namely, Microban's Guidelines for Trademark Use.

14.     These agreements typically include minimum commitments and a required testing fee, usually assessed annually, to ensure that the Brand Partners are properly using the Microban Compounds and that their products are, in fact, demonstrating the claimed antimicrobial efficacy.

15.     Based on its extensive, exclusive, source-identifying, and continuous use of the MICROBAN® mark, since 1975 through its predecessor in interest, the Microban name, brand, and trademarks are recognized globally among businesses and consumers for the effectiveness of the antimicrobial technologies infused into products sold worldwide. As such, Microban owns several United States Trademark Registrations for its MICROBAN® family of marks (the MICROBAN® Family of Marks) in connection with the development, manufacture, marketing, and sale of the Microban Compounds and related products and services.

16.     Microban owns U.S. Federal Trademark Registration No. 1,141,006 for the MICROBAN® word mark for use in connection with additives to impart antibacterial, antifungal and antimicrobial properties to plastic resins in International Class 01, which has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A true and correct copy of the Registration Certificate is attached hereto as Exhibit 3.

17.     Microban owns U.S. Federal Trademark Registration No. 2,611,477 for the MICROBAN® word mark for use in connection with antimicrobial, antibacterial, and antifungal chemical additives for incorporation into plastic resins and products made from such additives, namely, fibers, fabrics, and a wide variety of plastic resin consumer goods in International Class 01, which has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A true and correct copy of the Registration Certificate is attached hereto as Exhibit 4.

18.     Microban owns U.S. Federal Trademark Registration No. 5,201,589 for the

 design mark for use in connection with, *inter alia*, antimicrobial

coatings to treat the growth of mold, mildew, bacteria and fungus on various surfaces; antimicrobial preparations for inhibiting mold, mildew and bacteria on various surfaces in International Class 05, which has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A true and correct copy of the Registration Certificate is attached hereto as Exhibit 5.

19. Microban owns U.S. Federal Trademark Registration No. 5,300,480 for the MICROBAN® word mark for use in connection with, inter alia, antimicrobial coatings to treat the growth of mold, mildew, bacteria and fungus on various surfaces; antimicrobial preparations for inhibiting mold, mildew and bacteria on various surfaces in International Class 05, which has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A true and correct copy of the Registration Certificate is attached hereto as Exhibit 6.

20. Microban owns U.S. Federal Trademark Registration No. 5,300,486 for the  design mark for use in connection with, *inter alia*, antimicrobial coatings to treat the growth of mold, mildew, bacteria and fungus on various surfaces; antimicrobial preparations for inhibiting mold, mildew and bacteria on various surfaces in International Class 05, which has been renewed as required and is incontestable pursuant to 15 U.S.C. § 1065. A true and correct copy of the Registration Certificate is attached hereto as Exhibit 7.

21. Each registration identified in paragraphs 16-20 above (collectively, the "MICROBAN® Registrations") remains active, valid, subsisting, and enforceable.

22. Microban has invested, and continues to invest, significant resources in the development, promotion, and protection of the MICROBAN® Family of Marks.

23.     Microban is thus an established and successful brand of antimicrobial and odor control additives, and its trademarks have become synonymous with high quality, effective products and excellent customer service that enables Brand Partners and consumers alike to confidently associate Microban and its products with its trademarks, including its MICROBAN® Family of Marks. Microban has built significant and valuable goodwill in its MICROBAN® Family of Marks, and the purchasing public recognizes and associates each of the marks with Microban, its well-known brands, and its goods.

24.     Microban has expended millions of dollars in marketing its brands and its products and developing the associated goodwill that accompanies its trademarks, including its MICROBAN® Family of Marks.  By virtue of the time, effort, and money that Microban has expended on advertisement and promotion, consumers closely identify the MICROBAN® Mark with high quality antimicrobial and anti-odor products originating solely from Microban.

25.     Microban has made substantial sales of goods under its MICROBAN® Mark, including through its extensive licensing program, which has been highly successful in promoting Microban's antimicrobial additives, and in identifying the source of such technology and goods as Microban and its well-established brand, and constitute genuine and authentic Microban goods.

26.     Plaintiff's antimicrobial technology products, both through its own consumer products and the products of Microban's Brand Partners that incorporate and advertise Microban's antimicrobial technology, are well known in the marketplace.  Customers are aware of Plaintiff's brand and seek it out for the quality associated with the brand.

27.     Plaintiff has also expended substantial funds in protecting and enforcing its trademark rights. In addition to maintaining its portfolio of federal trademark registrations, Plaintiff actively polices unauthorized uses of its trademarks. Plaintiff maintains a strict licensing

7

program of its MICROBAN® Family of Marks and does not allow any unauthorized use of its MICROBAN® Family of Marks.

**B.      Defendant Pilot's License Agreement with Microban and Subsequent Breach**

28.      Upon information and belief, Defendant Pilot is a manufacturer of automotive parts, consumer electronics, and personal protective equipment.

29.      Upon information and belief, Pilot sells its goods under at least the following brand names: Pilot Automotive, Lunna, and Bully, Rolling, Big Power, Voodoo Ride, Lunna, and Rovi.

30.      On or about August 22, 2019, Defendant Pilot entered into a License and Supply Agreement with Plaintiff Microban's parent company, Microban International, Ltd. ("MBI"). Exhibit 1.

31.      Under the License and Supply Agreement, MBI, through Plaintiff Microban, supplied Pilot with antimicrobial additives for incorporation into steering wheel covers ("Products") to be sold under the following Pilot brands: Pilot Automotive, Lunna, and Bully. *Id*. at ¶¶ 2, 4.

32.      The initial term of the License and Supplement Agreement commenced on September 1, 2019, and was set to end on July 31, 2024 ("Term"), with automatic renewal terms. *Id*. at ¶ 6.

33.      Under the License and Supply Agreement, Pilot is obligated to make royalty payments to MBI, and later Microban, during the Term equal to forty cents ($.40) per unit of product incorporating Microban antimicrobial additives sold by Pilot in each Agreement Quarter, due within thirty (30) days after the end of the Agreement Quarter. *Id*. at ¶ 9.

8

34. Under the License and Supply Agreement, Pilot is also obligated to pay MBI, and later Microban, a non-refundable annual testing fee of four thousand dollars ($4,000) on or before the effective date of each Agreement Year. *Id*. at ¶ 11.

35. Under the License and Supply Agreement, Microban is permitted to terminate the Agreement in the event of a material breach of the terms of the Agreement if such breach is not cured within thirty (30) days after the date of delivery of written of breach to Pilot. *Id*. at ¶ 12. The termination provision further provides: "Pilot acknowledges and agrees that, upon any termination or expiration of this Agreement the License shall automatically terminate, and Pilot shall have no further rights to use the Trademark in any manner." *Id*.

36. Under the License and Supply Agreement, Pilot is required to promote the products incorporating Microban's antimicrobial additives by prominently displaying, in a permanent fashion, the MICROBAN® mark on the products and on all packaging, advertising, and promotional materials related to the products, in accordance with Microban's Guidelines for Trademark Use and as pre-approved by Microban.  *Id*. at Ex. A, ¶6. The License and Supply Agreement further provides that: "Upon expiration or termination of this Agreement, Pilot acknowledges and agrees that the License shall terminate immediately and…Pilot shall have no further rights to use the Trademark in any manner and Pilot shall cease all use of Trademark and remove it from its website, marketing materials and product packaging, provided that Pilot shall have a period not to exceed 180 days to sell down any remaining inventory of manufactured Product that already features the Trademark." *Id*.

37. Effective September 1, 2020, MBI and Pilot executed a First Amendment to the License and Supply Agreement  ("First Amendment", collectively with the License and Supply Agreement, the "Agreement") in principal part to (1) add motor vehicle seat cover products and

motor vehicle floor mats ("New Products"), (2) extend the territory from North America to worldwide, with the exception of the motor vehicle seat cover products (for which Pilot was granted an exclusive license in North America), (3) extend the Term to December 31, 2024, (4) and to set forth royalty payments required for the New Products, including minimum royalties for each agreement quarter. Exhibit 2.

| Agreement Quarter | Motor Vehicle Seat Cover Product Minimum Royalty per Agreement Quarter in USD |
|---|---|
| Agreement Quarters beginning September 1, 2020 and January 1, 2021 | No Minimum Royalty |
| Agreement Quarters beginning April 1, 2021, July 1, 2021 and October 1, 2021 | $20,000 |
| Each Agreement Quarter during calendar year 2022 | $22,000 |
| Each Agreement Quarter during calendar year 2023 | $24,000 |
| Each Agreement Quarter during calendar year 2024 | $26,500 |

38.     Effective February 1, 2022, MBI assigned the Agreement to Plaintiff Microban, MBI's wholly owned subsidiary and operating company, with Pilot's express written consent. A true and correct copy of the Assignment Letter with Pilot's executed consent is attached hereto as Exhibit 8.

39.     Starting in or around July 2022, Pilot ceased making payment due to Microban under the Agreement. Declaration of Gary Ganon, attached here as Exhibit 9, at ¶ 6.

40.     Microban made several attempts through 2022 and into 2023 to contact Pilot regarding the overdue invoice.

41.     On October 19, 2022, after Microban's accounting department had sent requests for payment that had gone unanswered, Microban's Director of Business Development Gary Gagnon sent an email to Pilot's Direct of Sourcing Tony Wu requesting payment for Pilot's annual

10

testing fee under the License and Supply Agreement. That same day, Mr. Wu sent an email to his team requesting that the payment be made ASAP. *Id*. at ¶ 7.

42.     On November 8, 2022, Mr. Gagnon sent a follow-up email to Pilot because Microban still had not received payment. Pilot responded by copying Pilot's V.P. of Product Management Hitesh Patel. *Id*. at ¶ 8.

43.     After receiving no response from Pilot, Mr. Gagnon sent follow-up emails on December 7, 2022, December 23, 2022, and January 11, 2023. *Id*. at ¶¶ 9-11.

44.     In or around January 2023, Microban's Director of Business Development Gary Gagnon spoke with Mr. Patel at Pilot, who represented that he would investigate the payments owed to Microban. *Id*. at ¶ 12.

45.     On January 25, 2023, Mr. Gagnon followed up with Mr. Patel again by email after receiving no follow-up from Pilot after their phone call, and still having received no payment. *Id*. at ¶ 13.

46.     In or around early March 2023, Mr. Gagnon spoke by phone with Pilot's Director of Sourcing Tony Wu about the past-due invoices. *Id*. at ¶ 14.

47.     On March 20, 2023, Mr. Gagnon sent an email to Pilot, now copying Pilot's President and Chief Executive Officer Tim LeBeau, notifying Pilot that it was now delinquent in $68,000 of unpaid royalty fees plus at least $4,000 of testing fees and that it would be receiving notice to immediately cease and desist all sales and advertising using Microban's branding and antimicrobial advertising due to their breach of the Agreement. *Id*. at ¶ 15.

48.     On or about March 22, 2023, Microban sent Pilot formal written notice that it was in breach of the Agreement and provided thirty (30) days for Pilot to cure the breach. The letter advised that if the breach was not cured within thirty (30) days, the Agreement would terminate

immediately and that Pilot would be required to take down and cease all use of the MICROBAN®
Family of Marks. A true and correct copy of the Breach Notice Letter is attached hereto as Exhibit
10. No payment was received from Pilot.

49.     On or about May 12, 2023, Microban sent a Notice of Default and Demand for
Payment through outside counsel demanding full payment of the past due amounts, but no payment
was received from Pilot. A true and correct copy of the Notice of Default Letter is attached hereto
as Exhibit 11.  No payment was received from Pilot.

50.     Under the Agreement, when Defendant Pilot failed to cure its breach within thirty
(30) days of the March 22, 2023, notice, Pilot was to immediately cease use of the MICROBAN®
Family of Marks including removal of the Marks from its website, marketing materials and product
packaging as of April 21, 2023.  Pilot was permitted a period not to exceed 180 days to sell down
any remaining inventory of manufactured Product that already featured the MICROBAN® Marks,
or until October 18, 2023.

51.     On October 19, 2023, Microban sent Pilot a notice that it had failed to make
payments required under the Agreement. Microban advised Pilot that if a response was not
received by October 27, 2023, the Agreement would be terminated for breach and that all amounts
owed under the Agreement would accelerate and become due. Microban further advised Pilot that
this would also terminate the trademark License, and that Pilot would be required to take down
and cease all use of Microban's trademarks on its websites, marketing materials and product
packaging. A true and correct copy of the October 19, 2023 Letter is attached hereto as Exhibit 12.
No payment was received from Pilot.

52.     As of the filing of this Complaint, Pilot continues to co-brand its products and use the MICROBAN® Family of Marks on its product packaging in the same manner that it did prior to the termination of the Agreement (Exhibit 13 – screenshots of Pilot's website):



53.     Pilot continues to advertise the MICROBAN® Family of Marks on its website and it did prior to the termination of the Agreement, including an entire section of its dropdown menu entitled "MICROBAN":





54.     Pilot also continues to use Microban's MICROBAN® Family of Marks as it did prior to termination of the Agreement on its Amazon Storefront, including selling goods using Microban's trademarks on Amazon (Exhibit 14 – screenshots of Pilot's Amazon listings):



55. As of the filing of this Complaint, Defendant Pilot has an outstanding balance due and owing to Plaintiff of $96,000, exclusive of interest. True and correct copies of Microban's outstanding invoices are attached as Exhibit 15.

56. Microban has also suffered actual damages as a result of Defendant Pilot's breach of the Agreement in the amount $162,000, exclusive of interest, in minimum royalty fees and testing services due under the Agreement from Defendant Pilot's breach through the Agreement Term, December 2024. A true and correct accounting of amounts owed to Microban under the Agreement is attached as Exhibit 16.

57. Upon information and belief, Defendant Pilot has not purchased sufficient quantities of Microban Compound to last the amount of time that it has been selling products co-branded with the MICROBAN® Family of Marks.

58. Defendant Pilot's unauthorized marketing, promotion, and sale of products is likely to cause consumers to be confused or deceived or mistakenly believe that Defendant Pilot's infringing products are sponsored, endorsed, authorized by, or in some other manner affiliated with Microban, when they are not.

15

59.     The likelihood of mistake, confusion, and deception caused by Defendant Pilot's unauthorized use of the MICROBAN® Family of Marks has caused and will cause in the future irreparable harm to the goodwill symbolized by the MICROBAN® Family of Marks, the Microban Registrations, and the reputation the Marks embody.

60.     Upon information and belief, Defendant Pilot's actions have been and continue to be intentional, willful, malicious, and in complete disregard of Microban's rights.

61.     Defendant Pilot's unlawful conduct has irreparably harmed Microban, and Microban has no adequate remedy at law to redress these injuries.

### COUNT I – Breach of Contract

62.     Paragraphs 1-61 are incorporated herein by reference as though set forth in their entirety.

63.     Defendant entered into a valid and enforceable Agreement with Plaintiff.

64.     Plaintiff performed all obligations and/or conditions precedent to the enforcement of the Agreement.

65.     Defendant has materially breached the Agreement by failing to pay royalty fees and testing fees owed to Microban under the Agreement.

66.     As a direct and proximate result of Defendant's contractual breaches, Plaintiff has been damaged in the amount of at least $258,000, not including interest, or as further to be proven at trial.

### COUNT II – Federal Trademark Infringement
### (15 U.S.C. § 1114)

67.     Paragraphs 1-66 are incorporated herein by reference as though set forth in their entirety.

68.     Microban is the owner of the MICROBAN® Family of Marks, which it uses in connection with antimicrobial, antibacterial, and antifungal chemical additives for incorporation into plastic resins and products made from such additives, namely, fibers, fabrics, and a wide variety of plastic resin consumer goods and antimicrobial coatings to treat the growth of mold, mildew, bacteria and fungus on various surfaces. Included in the MICROBAN® Family of Marks are at least the following incontestable U.S. Federal Trademark Registrations: U.S. Reg. No. 1,141,006, U.S. Reg. No. 2,611,477; U.S. Reg. No. 5,201,589; U.S. Reg. No. 5,300,480; and U.S. Reg. No. 5,300,456.

69.     Microban licensed the MICROBAN® Family of Marks to Defendant Pilot as part of the Supply and License Agreement and the First Amendment to the Supply and License Agreement (collectively, the "Agreement") for the limited purpose of co-branding its steering wheel covers, motor vehicle seat covers, and motor vehicle floor mats.

70.     After termination of the Agreement and its license, and despite receiving multiple notices regarding said termination, Defendant Pilot continued to use, and continues to use, the MICROBAN® Family of Marks, including one or more of the Microban Registrations listed above in Paragraph 68.

71.     Defendant Pilot had actual knowledge of the MICROBAN® Family of Marks owned by Microban and, without the consent of Microban, knowingly and deliberately used in commerce, in connection with the sale of goods claiming to contain antimicrobial additives, which are likely to cause confusion, mistake or deception with respect to the source of the goods and services and therefore constitutes trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

17

72.     As a direct and proximate cause of the infringing acts of Defendant Pilot, Microban has been damaged in an amount to be determined at trial.

73.     Defendant's above-described acts of infringement have caused irreparable injury to Plaintiff, and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violating Plaintiff's trademark rights, due to the confusion, mistake, or deception that will likely be generated among the trade and the public.  Plaintiff has no adequate remedy at law.

74.     As a result of the above-described intentional and deliberate infringement of Plaintiff's trademark rights by Defendant, Plaintiff is entitled to an injunction, an award of Defendant's profits, up to three (3) times any damages sustained by Plaintiff, costs of this action, and attorneys' fees, all as set forth in 15 U.S.C. §§ 1116 and 1117, subject to the discretion of this Court.

### COUNT III – Federal False Designation of Origin and Unfair Competition
### (15 U.S.C. § 1125(a))

75.     Paragraphs 1-74 are incorporated herein by reference as though set forth in their entirety.

76.     Defendant has, by virtue of its above-described acts, infringed upon Plaintiff's rights and competed unfairly with Plaintiff by falsely designating Defendant's goods as originating with Plaintiff or otherwise authorized, approved, or sponsored by Plaintiff in violation of 15 U.S.C. § 1125.

77.     Defendant had actual knowledge of the MICROBAN® Family of Marks owned by Microban and, without the consent of Microban, knowingly and deliberately used in commerce and continues to use in commerce, in connection with the sale of goods containing antimicrobial

18

additives and/or coatings, the MICROBAN® marks, which are likely to cause confusion, mistake, or deception in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

78. Defendant's use of the MICROBAN® marks creates consumer confusion in the marketplace by falsely creating the impression that a connection exists between Defendant and Microban, or the MICROBAN® Family of Marks or that Defendant's products are sponsored, approved, or endorsed by Microban.

79. Such use constitutes a false designation of origin, and/or a false or misleading description and/or representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Microban and Defendant, or as to the origin, sponsorship, or approval of the services or commercial activities of Defendant by Microban.

80. As a direct and proximate cause of the acts of Defendant Pilot as described herein, Microban has been damaged in an amount to be determined at trial.

81. Upon information and belief, Defendant has intentionally, knowingly, and willfully adopted, used, and continue to use the MICROBAN® marks in commerce to cause consumer confusion, mistake, and/or deception.

82. Defendant's above-described acts have been committed, and are continuing to be committed, with the knowledge that its use of the is intended to be used to cause confusion, or to cause mistake, or to deceive.

83. Defendant's above-described acts have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violating Plaintiff's rights and competing unfairly with Plaintiff due to the confusion,

19

mistake, or deception that will likely be generated among the trade and the public. Plaintiff has no adequate remedy at law.

84.     As a result of the above-described intentional, deliberate, and willful infringement of Plaintiff's trademark rights and unfair competition by Defendant, Plaintiff is entitled to an injunction, an award of Defendant's profits, up to three (3) times any damages sustained by Plaintiff, costs of this action, and attorneys' fees, all as set forth in 15 U.S.C. §§ 1116 and 1117, subject to the discretion of this Court.

### COUNT IV – North Carolina Unfair and Deceptive Trade Practices
### (N.C. Gen. Stat. § 75-1.1 *et seq*.)

85.     Paragraphs 1-84 are incorporated herein by reference as though set forth in their entirety.

86.     There is invaluable goodwill with Plaintiff's MICRBAN® Family of Marks. Plaintiff has expended considerable time and money advertising, promoting, and enforcing the MICROBAN® Family of Mark in connection with its goods and services.

87.     Upon information and belief, Defendant has realized unjust profits, gains and advantages as a proximate result of its infringing conduct.

88.     Defendant's infringing use of Plaintiff's MICRBAN® Family of Marks constitutes use in commerce that is likely to cause consumers to be confused, mistaken or deceived as to the affiliation, connection or association of Plaintiff with Defendant and/or the MICROBAN® Family of Marks, or as to the origin, sponsorship or approval of Defendant's goods and services by Plaintiff, in violation of N.C. Gen. Stat. § 75-1.1.

89.     The activities of Defendant as described in the foregoing paragraphs, and in each claim for relief asserted in this Complaint, constitute unfair methods of competition in or affecting commerce and/or unfair and deceptive acts or practices in or affecting commerce in North Carolina

20

and have proximately caused and are proximately causing injury to Plaintiff in North Carolina. Thus, these activities violate the North Carolina statutory prohibition of unfair and deceptive trade practices. N.C. Gen. Stat. § 75-1.1 *et seq*.

90. By reason of the foregoing, Plaintiff is entitled to recover from Defendant treble damages and reasonable attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16 and § 75-16.1.

## **COUNT VI – North Carolina Common Law Unfair Competition**

91. Paragraphs 1-90 are incorporated herein by reference as though set forth in their entirety.

92. The activities of Defendant as described in this Complaint are unfair acts that have damaged Plaintiff's legitimate business activities. Therefore, those activities of Defendant constitute unfair competition and unfair and deceptive acts and practices in the State of North Carolina pursuant to the common law of North Carolina.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Microban Products Company respectfully prays for judgment against Defendant Pilot Inc. as follows:

A. Judgment in Microban's favor and against Defendant on all counts;

B. A declaration that Defendant breached the Agreement;

C. An award of damages in the amount of $258,000, or as further to be determined at trial, and issue judgment in Microban's favor against Defendant for its breach of contract;

D. An order under 15 U.S.C. § 1116 and/or other applicable law preliminarily and permanently enjoining Defendant, including its officers, agents, servants,

employees, attorneys, successors, assigns, and all those in privity or acting in concert or participation with Defendant, from the following acts:

1) from using any trademark, service mark, logo, trade name, domain name or designation confusingly similar to the MICROBAN® Family of Marks owned by Microban;

2) from otherwise infringing Microban's trademark rights;

3) from making any statement or representation that falsely designates or describes Defendant as authorized, certified, or sponsored by, or associated with, Microban or that is likely to confuse consumers as to the source, affiliation, or sponsorship of such products;

4) from otherwise competing unfairly with Microban; and

5) from causing injury to the business reputation of Microban.

E. An order under 15 U.S.C. § 1116 and/or other applicable law preliminarily and permanently directing Defendant, including its officers, agents, servants, employees, attorneys, successors, assigns, and all those in privity or acting in concert or participation with Defendant, to perform the following remedial measures:

1) removing from any and all websites, retail platforms, and social media used to advertise and sell Defendant's products all uses of the MICROBAN® Family of Marks, as described in the complaint;

2) under 15 U.S.C. § 1118 and/or other applicable law, destroying all inventory of filters bearing the MICROBAN® Family of Marks, and certifying to Microban

that such destruction has occurred, including the number of units destroyed and the manner of their destruction; and

3) within thirty (30) days, providing to Microban a sworn statement as to how it has complied with the Court's orders;

F. An award of damages under 15 U.S.C. § 1117, and/or other applicable law, to Microban against Defendant resulting from its violation of Section 32(a) of the Lanham Act (15 U.S.C. § 1114(a)) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), for federal trademark infringement and federal unfair competition and false designation of origin, respectively, in an amount to be fixed by the Court, which in its discretion it finds just, including, without limitation:

1) Disgorgement of all profits received by Defendant from sales and revenues of any kind as a result of the actions complained of in this Complaint; and

2) all damages sustained by Microban as a result of Defendant's acts of infringement and unfair competition, including damages resulting from losses sustained by Microban and the equivalent of a reasonable royalty, and any other damages sufficient to compensate Microban for Defendant's trademark infringement, unfair competition, and false designation of origin;

G. A three-fold increase in damages under 15 U.S.C. § 1117 and/or other applicable law, for Defendant's willful, wanton, and deliberate acts of infringement and unfair methods of competition and deceptive practices;

H. That, because of the deliberate and willful actions of Defendant, this action be designated an exceptional case, thereby entitling Microban to an award of all reasonable attorneys' fees, costs, and disbursements incurred by Microban as a

result of this action, pursuant to 15 U.S.C. § 1117 and/or other applicable law, and that Microban be awarded such relief;

I.      An award pursuant to 15 U.S.C. § 1117 and/or other applicable law of costs and pre- and post-judgment interest on Microban's compensatory damages;

J.      That Microban be awarded judgment for damages as a result of Defendant's unfair and deceptive trade practices and that those damages be trebled pursuant to N.C. Gen. Stat. § 75-16 and that Microban be awarded its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1;

K.      That Microban be awarded judgment for damages resulting from Defendants' common law unfair competition; and,

L.      That this Court award any and all relief not here enumerated that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, by and through its undersigned attorneys, hereby demands trial by jury on all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves the right, upon further investigation and discovery, to assert such claims against Defendant and other responsible parties as may be just and appropriate under the circumstances.

24

Dated this the 30th day of September, 2024.

Respectfully submitted,

*/s/ Christina Davidson Trimmer*
Christina Davidson Trimmer
(N.C. Bar No. 44857)
Samuel Alexander Long, Jr.
(N.C. Bar No. 46588)
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com
          along@shumaker.com

*Attorneys for Plaintiff Microban Products Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| MICROBAN PRODUCTS COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | **VERIFICATION** |
| PILOT, INC. | ) | |
| D/B/A PILOT AUTOMOTIVE LLC | ) | |
| | ) | |
| Defendant. | ) | |

Rebecca Barnett Drzal, Esq., being first duly sworn, deposes and says: that she has read the foregoing Complaint and knows the contents thereof, that the same is true of her own knowledge except as to the matters therein stated on information and belief and, as to those matters, she believes them to be true.

_____
Rebecca Barnett Drzal, Esq.

Sworn to and subscribed before me
this 30 day of September, 2024.

Notary Public _____

My Commission Expires: May 15, 2026

[SEAL]

Kelly Davis
Notary Public
Mecklenburg County
North Carolina

26